## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20244-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

FREDERICK LEE ALVIN,

    *Defendant*.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTIONS TO DISMISS INDICTMENT

This matter is before the Court on Frederick Lee Alvin's ("Defendant" or "Mr. Alvin") renewed motions to dismiss two counts of his criminal indictment. Defendant, who is accused of robbing a convenience store at gunpoint, moves to dismiss Count 4 of the Second Superseding Indictment, which charges him with unlawfully possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). [D.E. 92]. Defendant argues that Section 922(g)(1) infringes on his fundamental right to possess a firearm in contravention of the Supreme Court's holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Mr. Alvin also moves to dismiss Count 3, charging him with the use of a firearm in furtherance of a crime of violence, in breach of 18 U.S.C. § 924(c)(1)(A)(iii). [D.E. 89]. The Unites States of America (the "Government") filed Responses in Opposition to both renewed motions on March 15 and 22, 2023, [D.E. 93, 95], to which Defendant timely replied. [D.E. 96,

101].  Therefore, the Motions are now ripe for disposition.[1]  After careful consideration of the Motions, the record, the relevant authorities, and for the reasons discussed below, Defendants' Motions should be **DENIED**.

## I.   *BACKGROUND AND PROCEDURAL HISTORY*

The Second Superseding Indictment charges Mr. Alvin with four different counts that arise from his alleged involvement in the armed robbery of a convenience store on or about April 3, 2022.  Specifically, Mr. Alvin is charged with conspiracy to commit Hobbs Act robbery (Count 1), commission of Hobbs Acts robbery (Count 2), possession and discharge of a firearm in furtherance of a crime of violence (Count 3), and possession of a firearm and ammunition by a convicted felon (Count 4). [D.E. 43].

On June 28, 2022, this Court held a hearing pursuant to 18 U.S.C. § 3142(f) to determine whether Mr. Alvin should be detained prior to trial.  [D.E. 8].  During the hearing, the Government proffered the following factual evidence regarding Mr. Alvin's alleged crime and past violent conduct.

Just after midnight on April 3, 2022, Defendant allegedly robbed a convenience store at gunpoint, threatening to kill the clerk, and discharging one round of ammunition into the floor before fleeing with approximately $3,000 in cash.  *Id.* at 2.  Mr. Alvin, however, was arrested during a separate robbery at a hotel on May 8, 2022.  During that robbery, Mr. Alvin fired a shot at the hotel owner, narrowly missing him, resulting in state charges of attempted murder, robbery, and burglary.  Moreover,

---

[1] On March 20, 2023, the Honorable Darrin P. Gayles referred the Motions to the Undersigned for a Report and Recommendation.  [D.E. 94].

before these incidents, on June 16, 2018, Mr. Alvin discharged a gun toward the ground near another individual after getting into an argument with him outside of a convenience store.  As a result, Defendant was arrested and charged with aggravated assault.  *Id.* at 3.

Based on the evidence presented at the initial detention hearing, this Court found that Mr. Alvin posed a serious danger to the community and, thus, ordered his detention without bond.  *Id.* at 4.

After the case was first set for trial, Defendant previously filed Motions to Dismiss Counts 3 and 4 of the First Superseding Indictment on September 12 and 21, 2022.  [D.E. 25, 29].[2]  By means of a Report and Recommendation, the undersigned found Defendant's arguments unpersuasive and recommended that both motions be denied on December 9, 2022.  [D.E. 50].  During status conference on January 11, 2023, the District Judge noted that the Government had filed an intervening Second Superseding Indictment which rendered the original motions to dismiss moot. Accordingly, the Court denied both motions, and instructed Defendant to file renewed motions to dismiss aimed at the proper superseding indictment, which Defendant has done.

Defendant's renewed motions, which incorporate the arguments in his prior briefs (*i.e.*, [D.E. 25, 30, 44, 48, 60, 72, and 77]), put forth the same substantive arguments raised in his original motions to dismiss.  In essence, Defendant argues

---

[2] It is undisputed that the First and Second Superseding Indictments charged Defendant with substantively identical crimes.

that Count 3, charging him with using a firearm in furtherance of a crime of violence in breach of 18 U.S.C. § 924(c)(1)(A)(iii), should be dismissed because Hobbs Act robbery is not a qualifying "crime of violence" for the purposes of Section 924(c). Similarly, Defendant alleges that Count 4 should be dismissed because Section 922(g)(1) is no longer constitutionally viable following the Supreme Court's recent decision in *Bruen*.

## II.   APPLICABLE PRINCIPLES AND LAW

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

## III.   ANALYSIS

### A.   18 U.S.C. Section 922(g)(1)

We first address Mr. Alvin's constitutional challenge to Section 922(g)(1). Defendant's motion argues that the Supreme Court's recent decision in *Bruen* renders

Section 922(g)(1) unconstitutional on its face. Specifically, Defendant contends that, despite being a convicted felon, under *Bruen*'s new analytical framework his "possession of a handgun comes squarely within the Second Amendment's 'plain text,'" making his conduct "presumptively protect[ed]" by the Second Amendment. [D.E. 25 at 5] (alteration in original). Accordingly, Defendant insists, under *Bruen*'s two-part "text and history" test, the Government bears the burden to show that Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation" in order to pass constitutional muster, and this the Government cannot do. *Id.* By necessity Defendant also asserts that this court should disregard the Supreme Court's dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008), regarding the presumptive validity of "longstanding prohibitions on the possession of firearms by felons." [D.E. 30 at 4].

### 1. Eleventh Circuit Precedent Dictates that Defendant's Conduct Is Not Protected by the Second Amendment

The Court finds Defendant's arguments unpersuasive for two reasons. First, Defendant's theory that his possession of a firearm is conduct presumptively protected by the Second Amendment fails because this argument has been foreclosed by binding Eleventh Circuit precedent. Indeed, the Eleventh Circuit has expressly, and repeatedly, stressed that convicted felons fall within a class of individuals that are "disqualified from the exercise of Second Amendment rights," *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010), and, as such, are unprotected by the right to keep and bear arms. On this score, Defendant gets ahead of himself in attributing to *Bruen* revolutionary implications that purportedly overruled in blanket fashion the

Supreme Court's, and our court of appeals', Second Amendment jurisprudence.  In particular, Defendant's suggestion that *Bruen* effectively undermined the legal underpinnings of *Rozier* and its progeny is simply wrong.

Second, even assuming that Defendant's conduct is protected by the right to bear arms as articulated in *Bruen*, Defendant's motions should still be denied because the Government has proffered sufficient historical evidence to support the conclusion that Section 922(g)(1) is consistent with this nation's historical traditions on firearm regulations and satisfies *Bruen* review.

In his renewed motion, Defendant insists that this Court should find that *Rozier* was overruled by the Supreme Court's holding in *Bruen*.  In doing so, Defendant cites Judge Robert Scola's two-page ruling in *United States v. Hester*, wherein Judge Scola, relying on a report and recommendation by Magistrate Judge Jacqueline Becerra, found that *Rozier* no longer controlled whether a felon's possession was protected by the Second Amendment in our circuit.  [D.E. 92 at 2–3]. We respectfully disagree with this view, however, because, as we explain in greater detail below, *Rozier*'s holding that convicted felons—particularly violent ones such as Defendant—are excluded from the protections of the Second Amendment, is fully consistent with the Supreme Court's decisions in both *Heller* and *Bruen*.

The Eighth Circuit's recent decision in *Sitladeen* lends support to our reasoning.  *See United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023).  There, the Eighth Circuit rejected a Second Amendment challenge to 18 U.S.C. § 922(g)(5)(A), which prohibits firearm possession by noncitizens, concluding that the question was

controlled by prior circuit precedent holding that individuals subject to the statute "are not part of 'the people' to whom the protection of the Second Amendment extend." *Id*. at *5. The opinion reasoned that the analysis in *United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011) (in an opinion tracking our Circuit's analysis in *Rozier*) was "consistent with" the Supreme Court's decision in *Bruen* because *Flores* did not rely on a means-end scrutiny assessment but rather concluded that the conduct at issue was not protected by the plain text of the Second Amendment:

> Though the opinion is short on explanation, it is unmistakable that our holding in *Flores* is about the plain text of the Second Amendment— about what is meant by the phrase, "the people." See 663 F.3d at 1023. Unlike the Second, Seventh, Ninth, and Tenth Circuits, we did not reach our conclusion that § 922(g)(5)(A) is constitutional by engaging in means-end scrutiny or some other interest-balancing exercise. *See id*. Rather, as the unqualified language of the opinion and the citation to *Portillo-Munoz* make clear, we reached our conclusion by considering— consistent with what *Bruen* now requires—whether the conduct regulated by § 922(g)(5)(A) was protected by the plain text of the Second Amendment. And we determined that it was not, as unlawfully present aliens are not within the class of persons to which the phrase "the people" refers. Nothing in *Bruen* casts doubt on our interpretation of this phrase. See 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."). Indeed, *Bruen* "decide[d] nothing about who may lawfully possess a firearm." *Id*. at 2157 (Alito, J., concurring) (emphasis added). Therefore, we remain bound by *Flores*. *See Young v. Hayes,* 218 F.3d 850, 853 (8th Cir. 2000) (discussing the prior-panel rule).

*Id*. at 984–985.

As explained in more detail below, we too remain bound by *Rozier*. Much as in *Flores*, the *Rozier* panel did not reach its conclusion by engaging in a means-end scrutiny or other interest-balancing exercise. Rather, *Rozier*'s approach was confined to "step one" of the *Bruen* equation. *See Rozier*, 598 F.3d at 770. As the court

expressly put it, "the initial question is whether one is qualified to possess a firearm[,]" and Rozier did not make it past this threshold inquiry because, as a felon, the court found that he was "disqualified from the exercise of Second Amendment Rights." *Id. Cf. Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1321 (11th Cir. 2023) (explaining that after *Heller* the Eleventh Circuit adopted a two-part test, and that *Bruen* "abrogated [only] step two of this framework").

Subsequent Eleventh Circuit precedent makes clear that *Rozier*'s holding focused on the threshold inquiry of whether the conduct at issue (*i.e.*, a felon's possession) was conduct protected by the Second Amendment.  Hence, felons categorically "may be 'disqualified from' possessing arms without violating the Second Amendment" because regardless of the scope of "the people," the "particular history" of the right to keep and bear arms "demonstrates that it extended (and thus extends) to some categories of individuals, but not others"—and in particular, *not* to felons.  *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022) (citing *Rozier*, 598 F.3d at 770–771).  *See also Jimenez-Shilon*, 34 F.4th at 1052 (Newsome, J., concurring) (the "[Eleventh Circuit has] never applied means-ends scrutiny in a published decision analyzing a Second Amendment challenge.")

Our conclusion that *Rozier* was not abrogated by *Bruen* finds ample support in the rulings of several district courts within our circuit.  Thus, we find that § 922(g)(1) is facially constitutional and Defendant's motion should be denied.  *See, e.g., United States v. Meyer*, No. 22-10012-CR, 2023 WL 3318492, at *3–4 (S.D. Fla. May 9, 2023) (holding that *Rozier* is good law and observing that "every federal judge who has

8

considered this question since *Bruen* has upheld the continued validity of §
922(g)(1).”); *United States v. Isaac*, No. 522CR117LCBHNJ1, 2023 WL 1415597, at
*5 (N.D. Ala. Jan. 31, 2023) (“*Bruen* did not disturb *Heller* but took great lengths to
clarify it, and nothing in *Bruen* conflicts with the Eleventh Circuit’s construction of
*Heller* regarding § 922(g)(1)’s harmony with the Second Amendment.”); *United States
v. Williams*, No. 121CR00362LMMLTW1, 2022 WL 17852517, at *2 (N.D. Ga. Dec.
22, 2022) (“the Court concludes that *Rozier* remains controlling precedent in this
circuit.”).

      This Court is bound by precedent from the Eleventh Circuit “unless and until
[such precedent] is overruled or undermined to the point of abrogation by the
Supreme Court . . . .” *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)
(citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)). Accordingly,
we are bound to follow Eleventh Circuit precedent that, relying on *Heller* and
*McDonald*, has foreclosed Defendant’s argument by categorically excluding a felon’s
possession of a firearm from the range of conduct that is presumptively protected by
the Second Amendment. “[*Rozier*’s] textual interpretation may or may not be correct.
But until the Supreme Court or our en banc [appeals court] determines otherwise,
the law of our circuit is that [convicted felons] are not part of ‘the people’ to whom the
protections of the Second Amendment extend.” *Sitladeen*, 64 F.4th at 987. *See also
Atlantic Sounding Co. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007) (explaining
that “a later panel may depart from an earlier panel’s decision only when the
intervening Supreme Court decision is ‘clearly on point,’” and that when only the

reasoning, and not the holding, of the intervening Supreme Court decision "is at odds with that of our prior decision" there is "no basis for a panel to depart from our prior decision."). As we note below, neither *Bruen*'s holding nor its reasoning is at odds with the Eleventh Circuit precedent that governs this case. *Rozier* thus forecloses Defendant's facial challenge to the felon in possession count.

### 2.   Bruen *Does Not Explicitly or Implicitly Abrogate* Rozier

Defendant nevertheless asserts that *Bruen* disrupts this entire body of law, but this is an extreme proposition unsupported by *Bruen*. This theory has been rejected by a multitude of courts across the country, even within our circuit, that have upheld the constitutionality of Section 922(g)(1) in the wake of *Bruen*.

We begin with a short review of the Supreme Court's *Heller* and *McDonald* rulings, which provide the legal foundation for the Eleventh Circuit's reasoning in *Rozier* and the cases that followed it. We then discuss the controlling Eleventh precedent that forecloses Defendant's argument, followed by a discussion of how *Bruen* left this body of case law undisturbed.

### a)   *Supreme Court Precedent in Heller and McDonald*

In *Heller*, the Supreme Court undertook its "first in-depth examination of the Second Amendment." *Heller*, 554 U.S. at 635. At issue was the constitutionality of the District of Columbia's ("D.C.") ban on the possession of handguns in the home. *Id.* at 573. The respondent, Heller, was a D.C. law enforcement officer who was permitted to carry a handgun while on duty but was not permitted to register or keep a handgun in his D.C. home. *Id.* at 575-76. The Supreme Court held, "on the basis of both text and history, that the Second Amendment conferred an individual right to

keep and bear arms." *Id.* at 595.  In so holding, the Supreme Court first analyzed the plain language of the text of the Second Amendment.  *See id.* at 576-600.  In finding that the Second Amendment secures an individual right to bear arms for self-defense, and not just for use in a militia, the Court considered that "the inherent right of self-defense has been central to the Second Amendment right." *Id.* at 628.

The Supreme Court cautioned, however, that "the right secured by the Second Amendment is not unlimited" and recognized that this right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.  And while the Court did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it expressly instructed that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.*  The Court deemed these prohibitions as "presumptively lawful regulatory measures" that fall within "exceptions" to the right to bear arms.  *Id.* at 627 n.26, 635.

Moreover, throughout its ruling, the Court stressed that the right of possession embodied in the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," and suggested that certain individuals, such as "felon[s]" and the "insane," are disqualified from exercising Second Amendment rights.  *Id.* at 631, 635; *see also id.* at 620 ("We described the right protected by the Second Amendment as 'bearing arms for a lawful purpose'"); *id.* at 628 ("[T]he inherent right of self-defense has been central to the Second Amendment

right."); *id.* at 630 (D.C. law prohibited firearm use "for the core lawful purpose of self-defense").

Two years later, in 2010, the Supreme Court struck two Illinois city handgun bans in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), holding that the Second Amendment is fully applicable to the States through the Fourteenth Amendment.  In so doing, a plurality of the Court in *McDonald* repeated its "assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'"  *Id.* at 786 (quoting *Heller*, 554 U.S. at 626).

     *b)*    *Eleventh Circuit Precedent Followed Heller's Reasoning*

Although the Eleventh Circuit has not "ventured onto the terrain of post-*Heller* Second Amendment jurisprudence" on too many occasions, *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1323 (11th Cir. 2015), the Court's available guidance in this domain is fatal to Defendant's motion for two reasons: first, it makes clear that convicted felons fall within a class of individuals that is disqualified from the exercise of Second Amendment rights; and, second, it established that Section 922(g)(1) is constitutionally viable.  We are compelled to follow this precedent.

In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) (per curiam), the Eleventh Circuit upheld the constitutionality of Section 922(g)(1) and ruled that convicted felons are not protected by the right to keep and bear arms.  Rozier, like Alvin, had previously been convicted of a felony yet challenged his Section 922(g)(1) conviction on the ground that his possession of a handgun, as in *Heller*, took place "in the home and for the purposes of self-defense."  *Id.* at 769-70.

The Court rejected Rozier's argument holding that, regardless of the weapon's purpose, Rozier was not qualified to possess a firearm in the first place by virtue of his "status as [a] felon[]." *Id.* at 770-71. Citing to *Heller*'s instruction that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," and to the Supreme Court's reference to individuals "disqualified from the exercise of Second Amendment rights," the Eleventh Circuit held that Section 922(g)(1) is "a constitutional avenue to restrict the Second Amendment rights of certain classes of people. Rozier, by virtue of his felony conviction, falls within such a class." *Id.* at 771. Accordingly, the Court determined that the circumstances surrounding Rozier's possession of a firearm in breach of Section 922(g)(1) were irrelevant and upheld his conviction under the statute. *Id.* at 772.

The Eleventh Circuit reiterated the central holding of *Rozier* (*i.e.*, that convicted felons are part of a class of individuals disqualified from the exercise of Second Amendment rights) and its binding character in subsequent Second Amendment cases. In *GeorgiaCarry.Org*, the Eleventh Circuit rejected a Second Amendment challenge to 36 C.F.R. § 327.13, a federal law that prohibited the possession of loaded firearms or ammunition on property managed by the U.S. Army Corps of Engineers. *GeorgiaCarry.Org*, 788 F.3d at 1320. In its ruling, the Court referred to its prior holding in *Rozier*, and explained that the *Rozier* court "relied on *Heller's self-limiting dictum*" in reaching its holding. *See id.* at 1324 (emphasis added). This is notable, because, as the Court instructed in *Rozier*, "to the extent that

this portion of *Heller limits* the Court's opinion to possession of firearms by law-abiding and qualified individuals, it is not dicta." *Rozier*, 598 F.3d at 771 n.6 (emphasis added) (citing *Denno v. Sch. Bd. of Volusia Cty., Fla.*, 218 F.3d 1267, 1283 (11th Cir. 2000)); *see also United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) (observing that the Eleventh Circuit "must follow" Supreme Court dictum).  Finding its prior cases instructive, the Court then dismissed defendant's reliance on *Heller*, observing that the Corp's firearms regulation did not reach nearly as far as the D.C. regulation, which totally banned handgun possession in the home, and upheld the constitutionality of Section 327.13.

Two years later, in *United States v. Focia*, 869 F.3d 1269 (11th Cir. 2017), a case dealing with the unlicensed sale of firearms through the dark web, the Eleventh Circuit reiterated its understanding of *Heller* as supportive of the view that measures disarming convicted felons "comport with the Second Amendment because they affect *individuals or conduct unprotected* by the right to keep and bear arms."  *Id.* at 1286 (emphasis added).  The Court noted that, "[a]ccounting for these types of longstanding prohibitions, . . . we have [] upheld the constitutionality of § 922(g)(1) because statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment[.]"  *Id.* at 1286 (citing *Rozier*, 598 F.3d at 771) (quotation marks omitted).  The Court observed that this line of precedent "provides examples of laws that do not substantially burden the Second Amendment," and concluded that Section 922(a)(5), much as Sections 922(g)(1) and (9), survives constitutional scrutiny.  *Id.* at 1286-87.

14

Finally, earlier this year, the Court again echoed *Rozier*'s holding in a case dealing with a challenge to 18 U.S.C. § 922(g)(5)(A), a statute prohibiting the possession of firearms by illegal aliens. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1043 (11th Cir. 2022). In rejecting defendant's challenge, the Court avoided addressing the question of whether an illegal alien in defendant's position (*i.e.*, with extensive ties to the U.S.) could be said to be among "the people" protected by the Second Amendment. *Id.* at 1045. The Court found the inquiry unnecessary, holding instead that even if defendant were among "the people," Section 922(g)(5)(A) was nevertheless legal because "illegal aliens" fall within a "group[] of people" who is disqualified from the exercise of Second Amendment rights. *Id.* at 1044-45. In so holding, the Eleventh Circuit relied on *Heller* and *Rozier*, unequivocally stating that, "as both the Supreme Court and this Court have observed, even individuals who are indisputably part of 'the people,' such as dangerous felons . . . , *might not partake* of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment." *Id.* at 1046 (emphasis added) (citing *Heller*, 554 U.S. at 626; *Rozier*, 598 F.3d at 77071). Because the question at hand was one of first impression, the Court proceeded to survey historical precedents to the disarmament of illegal aliens and concluded that such regulations are consistent with the Second Amendment's text and history. *Id.* 1046-50.

We are bound by this line of binding precedent, at least absent an *en banc* circuit opinion that pursues a very different path after *Bruen*, which is highly unlikely. For now, the Eleventh Circuit has expressly, and repeatedly, stressed that

convicted felons fall within a class of individuals that are "disqualified from the exercise of Second Amendment rights." *Rozier*, 598 F.3d at 771; *see also United States v. Dowis*, 644 F. App'x 882, 883 (11th Cir. 2016) ("Certain individuals—including convicted felons—are disqualified from the exercise of Second Amendment rights.") (quotation marks and citation omitted); *Flick v. Attorney General*, 812 F. App'x 974, 975 (11th Cir. 2020) ("Our reasoning in *Rozier* applies equally to Flick's as-applied challenge and thus forecloses it"); *United States v. Reverio*, 551 F. App'x 552 (11th Cir. 2014) ("Reverio argues that section 922(g)(1) interferes with his fundamental right to bear arms under the Second Amendment, but his argument is foreclosed by our holding in [*Rozier*]").

And in light of this line of controlling precedent, we are compelled to reject Defendant's claim that his "possession of a handgun comes squarely within the Second Amendment's 'plain text,'" making his conduct "presumptively protect[ed]" by the Second Amendment.  [D.E. 25 at 5].  This argument has been foreclosed by the Eleventh Circuit's explicit exclusion of convicted felons from the protections of the Second Amendment, and we find no justifiable reason to depart from this governing authority at this point.  As we explain next, Defendant's contention that *Bruen* overruled this body of case law is unpersuasive.

c)    Bruen *is a Very Different Case that Leaves These Precedents Untouched*

As noted above, we are bound to apply Eleventh Circuit precedent that forecloses Defendant's argument.  Defendant asks this court, however, to depart from this line of precedent because, in his view, *Bruen* marks a dramatic shift in Second Amendment law that renders this line of circuit authority inapplicable.  [D.E. 25 at

3] [D.E. 30 at 2]. We disagree. While it is undeniable that *Bruen* shifts the framework for determining the constitutionality of *certain* government regulations under the Second Amendment, Defendant's theory that *Bruen* completely undoes this entire body of law is an extreme proposition unsupported by *Bruen*—which expressly left the rulings in *Heller* and *McDonald* undisturbed—and a theory that has been rejected by a multitude of district courts across the country upholding the constitutionality of Section 922(g)(1) in the wake of *Bruen*.

In *Bruen*, the Supreme Court addressed the constitutionality of New York's firearm licensing statute, which "condition[ed] issuance of a license to carry [a handgun] on a citizen's showing of some additional special need" beyond general self-defense. *Bruen*, 142 S. Ct. at 2122. The Supreme Court held that the Second Amendment protected "an individual's right to carry a handgun for self-defense outside the home" and found New York's law unconstitutional in that it required this additional showing of special need. *Id*. In so holding, the Supreme Court clarified the standard set forth in *Heller* and rejected the sliding-scale form of scrutiny approach that Courts of Appeals, after *Heller*, had adopted for assessing Second Amendment challenges. *See id*. at 2129-30, 2134.[3] In striking down the licensing statute, the Court "made the constitutional standard endorsed in *Heller* more explicit," and specifically directed courts to assess whether modern firearms

---

[3] This included our Circuit. "Like our sister circuits, we believe a two-step inquiry is appropriate: first, we ask if the restricted activity is protected by the Second Amendment in the first place; and then, if necessary, we would apply the appropriate level of scrutiny." *GeorgiaCarry.Org,* 687 F.3d at 1261 (articulating for the first time the two-step inquiry for evaluating Second Amendment claims post-*Heller*).

regulations are consistent with the Second Amendment's text and historical understanding. *Id.* at 2126, 2134. Specifically, the Court:

> reiterate[d] that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (citation omitted).

The articulation of this more explicit test notwithstanding, the *Bruen* decision was careful to acknowledge that it did not overrule, or even cast into doubt, the legal underpinnings of felons in possession statutes as established in *Heller* and *McDonald*. To the contrary, in the very opening paragraph of the opinion, Justice Thomas, writing for the Court, expressly reaffirmed *Heller* and *McDonald*, and noted that both cases defined the right to bear arms as belonging to "ordinary, law-abiding, citizen[s]." *Id.* at 2122. The Court said:

> In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Id.* at 2122.

Although the majority opinion did not specifically address *Heller*'s express carve-out regarding laws disarming convicted felons, that issue was simply not before

18

the Court. Nonetheless, the Court underscored that its holding was "in keeping with *Heller*" and *McDonald*, and reiterated throughout its opinion that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms for self-defense," a phrase used by the Court *twelve* times in its decision. *See id.* at 2122, 2131, 2134, 2138, 2150, 2155.

The concurrences and dissents in *Bruen* offer further support to the conclusion that *Bruen* did not alter *Heller*, Eleventh Circuit precedent based on *Heller*, or the constitutional status of Section 922(g)(1). Both Justice Alito and Justice Kavanaugh expressed in their concurring opinions their explicit intent to leave undisturbed government regulations prohibiting the possession of firearms by felons. For example, Justice Alito stated: "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . *Nor have we disturbed anything that we said* in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157 (Alito, J., concurring) (emphasis added).

Similarly, Justice Kavanaugh's concurring opinion, joined by Chief Justice Roberts, provided additional support for the continued viability of felon in possession restrictions in the wake of *Bruen*, stating that "[p]roperly interpreted, the Second Amendment *allows* a 'variety' of gun regulations," and restating *Heller*'s assurances that "[n]othing in our opinion should be taken to cast doubt on 'longstanding prohibitions on the possession of firearms by felons[.]'" *Id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting *Heller*, 554 U.S. at 626-27) (emphasis

added). This understanding was further embraced in Justice Breyer's dissent. Joined by Justice Sotomayor and Justice Kagan, Justice Breyer stated: "I understand the Court's opinion today to cast no doubt on" *Heller*'s treatment of laws prohibiting firearm possession by felons. *Id.* at 2189 (Breyer, J., joined by Sotomayor, J., and Kagan, J., dissenting).

In light of all these limitations to what the Court was addressing in *Bruen*, we are unpersuaded by Defendant's contention that *Bruen* completely (and silently as it turns out) turned the switch on the Supreme Court's Second Amendment jurisprudence, and therefore abrogated the Eleventh Circuit's rationale for upholding the constitutionality of Section 922(g)(1). Defendant even claims that *Bruen* effectively overruled Eleventh Circuit cases, such as *Rozier*, *GeorgiaCarry.Org*, and *Focia*, because those cases "applied a freewheeling 'means-end' interest-balancing" approach "in order to uphold a plethora of federal firearms regulations[.]"  [D.E. 25 at 4].  However, a careful review of these cases reveals that Defendant is quite mistaken on this score. Indeed, the "[Eleventh Circuit has] never applied means-ends scrutiny in a published decision analyzing a Second Amendment challenge. Rather, we have always—and only—assumed that we would do so if we determined, in some unidentified future case, that a law 'restricted activity' that is 'protected by the Second Amendment in the first place.'" *Jimenez-Shilon*, 34 F.4th at 1052 (Newsome, J., concurring) (citations omitted).  In other words, and contrary to Defendant's assertion, it is far more accurate to say that the Eleventh Circuit precedent that we now find binding has been decided at "[s]tep one of the predominant framework," a

step that the Supreme Court in *Bruen* deemed "broadly consistent with *Heller*." *Bruen*, 142 S.Ct at 2127; *see also Rozier*, 598 F.3d at 770 ("[T]he initial question is whether one is qualified to possess a firearm. In Rozier's case, the most relevant modifier, as to the question of qualification, is "felon").

Against this backdrop, we cannot agree with Defendant's disruptive reading of *Bruen*. Instead, we find that the Supreme Court left generally undisturbed the regulatory framework that precludes felons from possessing firearms by reaffirming its reasoning in *Heller* and *McDonald*. Therefore, Defendant's suggestion that *Bruen* effectively undermined the Eleventh Circuit's rationale for excluding convicted felons from firearm possession and upholding the constitutionality of Section 922(g)(1) is utterly unpersuasive. This conclusion is much more consistent with the Justices' express instructions in *Bruen* and finds ample support in recent cases addressing this same question in the wake of *Bruen*. *See, e.g.*, *United States v. Young*, No. CR 22-054, 2022 WL 16829260, at *7 (W.D. Pa. Nov. 7, 2022) ("*Bruen*, *Heller* and *McDonald* dictate that Defendant's alleged conduct does not fall within the scope of the Second Amendment's protections due to his felony drug convictions."); *United States of Am. v. Riley*, No. 1:22-CR-163 (RDA), 2022 WL 7610264, at *10 (E.D. Va. Oct. 13, 2022) ("A plain reading of the [Second Amendment] demonstrates that 'the people' remains limited to those within the political community and not those classified as felons."); *United States v. Ramos*, 21-CR-395 (C.D. Cal. Aug. 5, 2022) ("the Court has serious doubts that the plain text of the Amendment applies to Defendant and could find Section 922(g) constitutional on those grounds alone."); *United States v. Minter*, No.

3:22-CR-135, 2022 WL 10662252, at *3 (M.D. Pa. Oct. 18, 2022) ("*Bruen* does not, as Defendant suggests, invalidate or overturn the legal principles and analysis set forth in *Helle*r and *McDonald*, and much of the legal reasoning in Circuit decisions since *Heller* remains intact."); *United States v. Carpenter*, No. 1:21-CR-00086-DBB, 2022 WL 16855533, at *3 (D. Utah Nov. 10, 2022) ("There is nothing in *Bruen* to indicate that either *Heller*, Tenth Circuit precedent based on *Heller*, or § 922(g)(1), are no longer valid."); *Fried v. Garland*, No. 4:22-CV-164-AW-MAF, 2022 WL 16731233, at *5 (N.D. Fla. Nov. 4, 2022) (*Bruen* "makes it difficult to dismiss the idea that non-law-abiding citizens have no Second Amendment rights."); *United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022) ("[The dicta in *Heller*], coupled with the majority's focus in *Bruen* on the Second Amendment rights of 'law-abiding citizens' throughout the opinion convinces this Court that the Supreme Court would conclude that [Section 922(g)(1)] fail[s] to infringe on any Second Amendment rights.").

Based on this understanding of *Bruen*, we conclude that the Eleventh Circuit's decision in *Rozier*, and the cases that followed, remains good law and controls the disposition of Defendant's motion.  Defendant does not stand on equal footing with the plaintiff in *Bruen*: "[a] law-abiding, responsible citizen[ ] [who seeks] to use arms for self-defense." 142 S. Ct. at 2122.  He is instead a repeat violent offender who seeks to absolve himself of criminal liability despite knowingly possessing firearms (once again) in the commission of a crime of violence.  That is not the Second Amendment value that *Bruen* or any other Supreme Court case for that matter is trying to

22

safeguard.  Accordingly, Defendant's motion to dismiss should be denied simply under *Rozier* and *Heller*.

**3.      Section 922(g)(1) is Consistent With the Nation's History & Tradition**

Even if we assumed, for the sake of argument, that Defendant's status as a non-law-abiding citizen is now embraced by the Second Amendment based on the scope and breadth of the reasoning in *Bruen*, Section 922(g)(1) would still pass constitutional muster because the Government has demonstrated, in accordance with *Bruen*'s analytical framework, that the statute is consistent with this Nation's historical tradition of firearm regulation.  As the Eleventh Circuit has emphasized time and again, "being a member of 'the people' to whom the Second Amendment applies as a general matter is a necessary condition to enjoyment of the right to keep and bear arms, but it is not alone sufficient."  *Jimenez-Shilon*, 34 F.4th at 1044. Section 922(g)(1) is also consistent with the nation's historical tradition of firearm regulation, as discussed below, which means that the motion can be denied on this basis as well.

On this score, we have reviewed the historical record provided by the Government in support of its opposition.  [D.E. 27, 42, 93].  We find this record to be comprehensive and persuasive.  First, the Government's brief cites to sources from Colonial America, the founding era, and Antebellum America.  Such historical evidence supports the Government's contention that the historical record is consistent with the ban in section 922(g)(1) in a manner contemplated by *Bruen*.  *See Bruen*, 142 S. Ct. at 2127 (emphasizing that the Second Amendment memorialized

"pre-existing" rights and that the history of the late 1600's and colonial American history is instructive in determining the relevant historical references); *see also id.* at 2136 (stating "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.") (quoting *Heller*, 554 U.S. 634-35).   In that vein, it is important to note that several of the colonies had laws disarming felons, even of the non-violent variety, even as to those who defamed acts of Congress or refused to defend the colonies.   *Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 908 & n.11 (3d Cir. 2020) (surveying colonial laws from Pennsylvania, Connecticut, and Massachusetts).   Furthermore, Pennsylvania, New Hampshire, and Massachusetts "at their ratification conventions ... proposed amendments limiting the right to bear arms to both law-abiding and 'peaceable' citizens." *Id*. at 908.

To establish a history of felon firearm regulation, the Government points to numerous Treatises, Law Review articles, and cases, which decidedly refute Defendant's claim that "there was nothing [no regulation] before the twentieth century." [D.E. 93 at 10-15].   The Government quotes Thomas M. Cooley's *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 29 (1st ed. 1868)—itself cited by *Heller*, 554 U.S. at 616—to show that "some classes of people were 'almost universally excluded' from exercising certain civic rights, including 'the felon, on obvious grounds.'" *Id*. at 11. Furthermore, the Government finds support in the Eighth Circuit, in *United States v. Bena*, that recognized the Second Amendment incorporates "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible" and

24

"'did not preclude laws disarming ... criminals.'"  664 F.3d 1180, 1183 (8th Cir. 2011) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (Winter 1986)).

Similarly, the First Circuit has understood the right to bear arms in the Founding era as "'a civic right . . . limited to those members of the polity who were deemed capable of exercising it in a virtuous manner.'"  *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009) (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship,* 29 N. Ky. L. Rev. 657, 679 (2002)).

In further canvassing the Circuits, the Fourth Circuit has found that "[f]elons 'were excluded from the right to arms' " in or around the founding era, "because they were deemed unvirtuous."  *United States v. Carpio-Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (quoting Reynolds, *A Critical Guide to the Second Amendment,* 62 Tenn. L. Rev. at 480).  And the Seventh Circuit has pointed out that "*Heller* identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents."  *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 554 U.S. at 604).  That report explicitly recognized impositions of firearms restrictions on convicted criminals, stating "citizens have a personal right to bear arms 'unless for crimes committed.'"  *Id.* (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)).

Finally, of the states whose state constitutions (ratified during the founding era) "entitled their citizens to be armed ... [, many] did not extend this right to persons convicted of crime." *Skoien*, 614 F.3d at 640.  In light of this documented history, we agree that "the right to bear arms is analogous to other civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including: the right to vote, *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974); the right to serve on a jury, 28 U.S.C. § 1865(b)(5); and the right to hold public office, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998)."  [D.E. 93 at 14].

Even if none of the above historical examples are direct corollaries to section 922(g)(1), *Bruen* reminds us that there need not be an exact historical analogue.  The issue is not, as Defendant would frame it, whether there were any laws disarming felons at the time of the founding in the exact same manner that section 922(g)(1) disarms felons.  As Justice Thomas made clear, "even if a modern day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2118. (emphasis added).

*Bruen* instead dictates that we must decide whether the felon firearm ban at issue in this case is "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2131.  Historical analysis of Colonial America, the founding era, and Antebellum America clearly confirms that there were several instances of the disarming of non-law-abiding or non-virtuous citizens at these times—so close to, and simultaneously with—the ratification of the Second Amendment.  The Court finds that these examples are sufficient to show a tradition of limiting the possession of

firearms to that class of citizens society, at that time, considered virtuous.  The Court is confident it can rely on the historical record, discussed above, to find that today's federal prohibition on armed convicted felons found in section 922 (g)(1) is consistent with the historical limitations of the Second Amendment.  And while this provision may not be the "historical twin" of these historical references, it need not be.  *See Bruen*, 142 S. Ct. at 2133 (emphasis removed).

In short, because Section 922(g)(1) is "consistent with the Second Amendment's text and historical understanding," the Court finds that the statute is constitutional on this additional basis.  *Id*. at 2131.  Accordingly, Defendant's renewed motion to dismiss Count 4 of the Superseding Indictment, [D.E. 92], should be DENIED.

**B.** **_Whether Hobbs Act Robbery is "Crime of Violence" for the Purposes of Section 924(c)_**

Next, we turn to Defendant's renewed motion to dismiss Count 3 of the Indictment, which charges Mr. Alvin with discharging a firearm in furtherance of a crime of violence, in breach of 18 U.S.C. § 924(c)(1)(A)(iii).[4]  According to Defendant, after the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), Hobbs Act robbery is no longer a qualifying "crime of violence" for the purposes of Section 924(c), hence, he cannot be convicted under the statute.  For the reasons that follow, we again disagree, this time with Defendant's reading of *Taylor,* and recommend that his motion be **DENIED**.

---

[4] The renewed motion realleges all prior arguments made in support of Defendant's initial motion to dismiss (*i.e.*, [D.E. 29, 36, 40, 60, 72]).

### 1.    *The Second Superseding Indictment*

On August 16, 2022, a grand jury in the Southern District of Florida returned a five-count Superseding Indictment against the Defendant and co-defendant Luther Henry ("Mr. Henry" or "Co-defendant") arising out of their armed robbery of a convenience store in Miami, Florida. Defendant is accused of robbing the marker just after midnight on April 3, 2022, at gunpoint. During the robbery, Defendant discharged one round of ammunition into the floor and threatened to kill the clerk before fleeing with approximately $3,000 in cash. Mr. Henry acted as the lookout for the robbery.

On November 8, 2022, a grand jury returned a Second Superseding Indictment charging Mr. Alvin and his accomplice with substantively identical crimes. The Defendant and Mr. Henry are charged together with conspiracy to commit Hobbs Act robbery (Count 1) and completed Hobbs Act robbery (Count 2), both in violation of 18 U.S.C. Section 1951(a). Defendant is also charged alone with possessing and discharging a firearm in furtherance of a crime of violence for his use of the handgun during the robbery (Count 3), and with possession of a firearm and ammunition by a convicted felon, in violation of Section 922(g)(1) (Count 4). *See* [D.E. 17] [D.E. 43].

### 2.    *The Supreme Court's Holding in* Taylor *Does Not Apply to Defendant*

Defendant's motion takes issue with the two statutes charged in Counts 2 and 3 of the Second Superseding Indictment. On the one hand, Section 1951(a) provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or

purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).  The statute defines "robbery" as:

the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

Section 924(c), on the other hand, provides for a ten-year mandatory consecutive sentence for discharging a firearm in furtherance of a "crime of violence" and defines that term in the so-called "elements clause" as follows:

For purposes of this subsection the term "crime of violence" means an offense that is a felony and— (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

18 U.S.C. Section 924(c)(3)(A).

In *Taylor*, decided on June 21, 2022, the Supreme Court held that a conviction for ***attempted*** Hobbs Act robbery did not qualify as a crime of violence under Section 924(c)'s elements clause.  *See Taylor*, 142 S. Ct. at 2020-21.  As noted above, one element of completed Hobbs Act robbery is that a defendant take property "by means of actual or threatened force."  18 U.S.C. § 1951(b).  Because a completed Hobbs Act robbery can be committed by threat, the government may win a conviction for attempted Hobbs Act robbery by proving that a defendant attempted to threaten someone.  Although the elements clause covers the use of force, the attempt to use force, and the threat to use force, it does not cover attempts to threaten the use of

force.   Accordingly, the Supreme Court reasoned that because "Attempted Hobbs robbery does not require proof of any of the elements § 924(c)(3)(A) demands," a conviction for attempted Hobbs Act robbery cannot serve as the predicate offence supporting a conviction under Section 924(c).  *Id.* at 2021, 2024-25.

From this, Defendant makes the illogical leap that animates his motion: "[b]ecause *Taylor* held that one of the means – attempted Hobbs Act robbery – is not a § 924(c) 'crime of violence', and the Hobbs Act statute (§ 1951(a)) is indivisible, a conviction under that statute for Hobbs Act robbery is categorically overbroad and fails to qualify as a 'crime of violence.'"  [D.E. 29 at 5].  Contrary to Defendant's flawed assumption, however, the holding in *Taylor* has no bearing on whether a ***completed*** Hobbs Act robbery constitutes a "crime of violence" for the purposes of Section 924(c), and we cannot reach that implied conclusion that so clearly runs against the consistent finding of federal courts across the country, including within our circuit, that a completed Hobbs Act robbery is indeed a crime of violence.  *See, e.g., United States v. Worthen*, 60 F.4th 1066, 1069 (7th Cir. 2023) (rejecting same argument made by Defendant here, and "reiterat[ing] that the principal offense of Hobbs Act robbery qualifies as a crime of violence within the meaning of § 924(c)"); *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023) ("we see nothing in *Taylor*'s language or reasoning that undermines this Court's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)."); *United States v. Green*, No. 16-7168, 2023 WL 3470910, at *8 (4th Cir. May 16, 2023) (same); *United States v. Baker*, 49 F.4th 1348, 1360 (10th Cir. 2022) ("*Taylor* left no

room for reasonable debate that the crime-of-violence status of the completed offense of Hobbs Act robbery was not of analytical concern there; indeed, the Court expressly acknowledged that the issue was not before it.") (citing *Taylor*, 142 S. Ct. at 2024); *United States v. St. Hubert*, 909 F.3d 335, 348, 349, 349 n.11 (11th Cir. 2018) (holding that Section 1951(a) "is a divisible statute that sets out multiple crimes," and noting that "[six] circuits have applied the categorical approach, . . . and concluded that Hobbs Act robbery is categorically a crime of violence under the use-of-force clause in § 924(c)(3)(A)"); *In re Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016) ("Saint Fleur pled guilty to using [] a firearm during the Hobbs Act robbery [], which robbery offense meets the use-of-force clause of the definition of a crime of violence [in] § 924(c)(3)(A). This means Saint Fleur's sentence would be valid even if [] § 924(c)(3)(B)['s] residual clause [is] unconstitutional.").

In the face of this persuasive authority, Defendant's motion is conspicuously silent about the fact that the Second Superseding Indictment in this case unequivocally charges him with a *completed* Hobbs Act robbery, and that his charge under Section 924(c) is predicated on that completed crime of violence.    The indictment provides that Defendant:

> did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce . . . *by robbery* . . . in that the defendant did unlawfully take and obtain United States currency from the person and in the presence of a person employed by B & J Market . . . against the will of that person, *by means of actual and threatened force, violence, and fear of injury to said person.*

[D.E. 43 at 2] (emphasis added).

31

Yet, much as in Section A above, *see supra* at 4-6, Defendant again improperly attributes to *Taylor* overarching implications that purportedly undo settled Eleventh Circuit precedent on the violent character of a completed Hobbs Act robbery.  As noted above, however, *Taylor* does not support this interpretation, nor do the multiple courts that have rejected this same argument in the wake of *Taylor*.  *See, e.g.*, *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) ("[completed] Hobbs Act robbery, [is] a crime we have previously held constitutes a crime of violence under the elements clause."); *St. Hubert*, 909 F.3d at 345 ("this Court has already held that Hobbs Act robbery . . . independently qualifies as a crime of violence under § 924(c)(3)"); *see also United States v. Linehan*, 56 F.4th 693, 700 (9th Cir. 2022) (In holding that the offense of attempted Hobbs Act robbery was not a crime of violence, the Court did not suggest that completed Hobbs Act robbery must be treated identically, . . . [a]nd it is well established both pre- and post-*Taylor* that completed Hobbs Act robbery is a crime of violence under the elements clause."); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1349 (11th Cir. 2022) (Newsome, J., concurring) (observing that "the Court dutifully applies a version of the so-called 'categorical approach'" even after *Taylor*); *Baker*, 49 F.4th at 1356, 1360 ("*Taylor* does not implicate our [Tenth Circuit] holding in *Melgar-Cabrera*," which "employ[ing] the categorical approach," concluded "that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)"); *United States v. Moore*, No. 22-1899, 2022 WL 4361998, at *1 (8th Cir. Sept. 21, 2022) (rejecting appeal because "[t]hough the Supreme Court recently held that attempted Hobbs Act robbery is not a crime of

violence, . . . the plea agreement established that Moore pleaded guilty to completed Hobbs Act robbery, which is a crime of violence."); *United States v. Feliciano-Estremera*, No. CR 22-182 (PGS), 2022 WL 4357235, at *3 (D.N.J. Sept. 20, 2022) ("Taylor does not change the status of the law that a completed Hobbs Act robbery is [a] crime of violence with the requisite proof of force, thereby meeting the element prong of § 924(c)(3)(A) using the categorical approach.").

With this substantive backdrop of district and circuit court precedent establishing that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3), both pre- and post-*Taylor*, we cannot agree with Defendant's renewed arguments that charging a violation of § 924(c) predicated upon Hobbs Act robbery is either jurisdictionally or substantively defective. We find Defendant's reliance on the unpublished district opinion in *United States v. Louis*, Case No. 21-cr-20252-KMW, is simply misplaced. [D.E. 89 at 2-3]. As the Government rightly point out, that holding did not rule that the Hobbs Act robbery statute was unconstitutionally applied, but rather that the jury instructions for Hobbs Act robbery that were delivered at trial were overbroad. [D.E. 89-1 at 9:9-15; 89-2 at 3] ("As instructed, the jury was presented with a categorically overbroad Hobbs Act robbery offense"). No such instruction has been delivered in this case.

Moreover, to the extent that this unpublished district court case can be read to suggest that a completed Hobbs Act robbery is no longer a crime of violence for the purposes of § 924(c), we think it erroneously departs from substantive line of district and circuit court rulings that have rejected that idea, both pre- and post-*Taylor*. *See*

*United States v. Hardy*, No. 21-13701, 2022 WL 16753857, at *1 n.1 (11th Cir. Nov. 8, 2022) ("[W]e we remain bound by our precedent, which holds that Hobbs Act robbery constitutes a crime of violence for purposes of § 924(c).") (citation omitted). *See also supra* at 31-32.

In sum, Defendant's argument requires that we disregard binding precedent from our court of appeals. This we cannot do. Accordingly, we recommend that Defendant's motion to dismiss Count 3 on the ground that a completed Hobbs Act robbery is not a qualifying crime of violence for the purposes of Section 924(c), be DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Renewed Motions to dismiss the Government's Superseding Indictment, [D.E. 89, 92], should be **DENIED** in their entirety.

Pursuant to Local Magistrate Rule 4(b), the parties have until June 5, 2023, to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 22nd day of

May, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge