**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 22-20244-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

FREDERICK LEE ALVIN,

    *Defendant*.

_____/

## REPORT AND RECOMMENDATION ON MOTION TO STRIKE

This matter is before the Court on a separate motion filed by Frederick Lee Alvin ("Defendant" or "Alvin"), who is accused of robbing a convenience store at gun point on April 3, 2022. Defendant moves the Court to strike the Armed Career Criminal Act ("ACCA") allegations made against him in the superseding indictment on constitutional bases. [D.E. 110]. The Government filed timely responses to the motion, [D.E. 129], to which Defendant replied [D.E.132]. The motion is ripe for disposition.[1] After careful consideration of the motion, the record, the relevant authorities, and for the reasons discussed below, Defendant's motion to strike the ACCA allegations from the indictment, or bifurcate the trial, [D.E. 110] should be **DENIED**.

---

[1] On October 10, 2023, the Honorable Darrin P. Gayles referred this and other motions to the undersigned Magistrate Judge. [D.E. 43].

## I.  BACKGROUND

The Second Superseding Indictment charges Mr. Alvin with four criminal counts stemming from his alleged involvement in the armed robbery of a convenience store on April 3, 2022. [D.E. 43]. According to the Government, on that date, Mr. Alvin entered the B & J Market in the Little Havana neighborhood of Miami wearing a black mask. Once in the store, he proceeded to pull out a handgun and threaten to shoot the cashier if he did not to give him the money in the register. [D.E. 52 at 3]. Mr. Alvin fired a single shot into the floor and took approximately $3,000 from the store register in cash before fleeing the store on foot. *Id.* Security footage from inside the market depicts the masked robber wearing a distinct black and gold "G-shock" watch, as well as a distinct pair of Nike sneaker shoes. *Id.* at 4.

Investigative efforts by law enforcement led to the identification of Luther Henry, Mr. Alvin's co-defendant and alleged accomplice in the market robbery.[2] Analysis of Mr. Henry's phone data revealed that the two of them spoke to each other immediately before and after the robbery, and that same data pinpointed their location near the closest cell tower to the market during the robbery. *Id.* A subsequent search warrant for Mr. Alvin's residence uncovered a loaded magazine containing the same type of bullets as the one fired at the market, as well as the same

---

[2] Mr. Henry has pled guilty to one count of conspiracy to commit Hobbs Act robbery and has agreed to cooperate with the Government. [D.E. 64 ¶¶ 1, 8].

green Nike Ken Griffey Jr. Air Max 1 athletic shoes worn by the suspect during the robbery. *Id*.

Mr. Alvin, however, was arrested during a different incident. On May 8, 2022, police officers responded to reports of an armed assault and robbery at a hotel in the Little River neighborhood of Miami. According to the owner of the hotel, Mr. Alvin entered the hotel with a gun and began knocking on various rooms. When the owner called the police, Mr. Alvin walked over to him in the lobby and fired the gun at his midsection. As the owner fled from the hotel, he heard additional gunshots. *Id*. 4–5.

By the time law enforcement arrived at the scene, Mr. Alvin had locked himself in one the hotel's unoccupied rooms. Law enforcement negotiators and S.W.A.T. officers attempted to convince Mr. Alvin to exit the room peacefully. During these talks, officers saw a gun lying on the floor of the room through a large window facing the front of the hotel. After several hours of negotiations, Mr. Alvin exited the hotel room without the gun and was arrested. Mr. Alvin was wearing a black and gold "G-shock" watch at the time his arrest. *Id*. at 5.

A crime scene investigator collected the gun from the room—a Taurus, Model PT111 G2, 9mm caliber pistol—and one fired casing from the hotel lobby floor. Inside the firearm was an additional fired casing, as well as one live round of ammunition. The live ammunition and casings found at the hotel were of the same type as the fired casing recovered at the B & J Market and the ammunition found during the search of Mr. Alvin's residence. A ballistics examiner later determined that the Taurus

firearm possessed by Mr. Alvin at the hotel was the same gun used in the market robbery on April 3. *Id.*

The Second Superseding Indictment charges Mr. Alvin with conspiracy to commit Hobbs Act robbery (Count 1), substantive Hobbs Act robbery (Count 2), possession and discharge of a firearm during the commission of a crime of violence (Count 3), and possession of a firearm and ammunition by a convicted felon (Count 4), in violation of 18 U.S.C. §§ 1951(a), 924(c)(1)(A)(iii) and 922(g)(1) and 924(e) respectfully.[3]

## II.   ANALYSIS

Defendant's moves to strike the ACCA allegations from the superseding indictment. [D.E. 110]. Alternatively, Defendant asks that the Court redact the ACCA allegations from the indictment and bifurcate his trial into two phases: (i) a liability phase devoid of any ACCA evidence, and (ii) an ACCA sentence enhancement phase at which the ACCA allegations would be presented to the jury.

The Second Superseding Indictment provides that, "[p]ursuant to Title 18, United States Code, Section 924(e)(1), it is further alleged that [Defendant] has three previous convictions by any court referred to in section 922(g)(1) of Tile 18 for a violent felony or a serious drug offence, or both, committed on occasions different from one another" (the "ACCA allegations"). [D.E. 43-2 at 3].

---

[3] Similarly, the State of Florida has brought five charges against Mr. Alvin arising out of the hotel robbery: (1) attempted felony murder with a firearm, (2) robbery by sudden snatching, (3) armed robbery with a firearm, (4) possession of a firearm by a convicted felon, and (5) burglary of an unoccupied structure.

4

Defendant submits that this court should strike or, alternatively, redact the ACCA allegations based on three different arguments. First, Mr. Alvin asserts that he does not have three prior convictions for crimes that constitute a "violent felony" or "serious drug offense," so discussion of these facts would be irrelevant and prejudicial. This contention is premised on the theory that the Florida statute under which he was convicted of prior drug offenses has a broader definition of cocaine than does the ACCA, so his state convictions cannot constitute predicate offenses for the purposes of ACCA enhancement (the "mismatch theory"). [D.E. 110 at 5–13]. Further, Defendant submits that the ACCA's "Occasions Clause" is facially unconstitutional because it allows the trial judge to invade the fact-finding domain of the jury in contravention of the Fifth and Sixth Amendments. *Id*. at 13–16. And third, Defendant asserts that the Occasions Clause is overly vague and renders the whole statute unconstitutional. *Id*. at 17–19.

The Government responds noting that Defendant's motion is premised on arguments that are expressly foreclosed by binding precedent in our Circuit, or that otherwise defy the logic of Supreme Court precedent and are unsupported by any legal authority. [D.E. 129 at 4–6]. Namely, the Government points out that the Defendant's mismatch theory was recently rejected by the Eleventh Circuit in a published, and on point, decision and as such his ACCA enhancement position is untenable. *Id*. Second, the response argues that the Supreme Court's holding in *Wooden v. United States*, 142 S.Ct. 1063 (2022), providing a framework for the application of the Occasions Clause, undermines Defendant's allegation that the

5

clause renders the statute overly vague. Relatedly, the Government stresses that neither the *Wooden* holding nor any Eleventh Circuit precedent lends support to his unprecedented Fifth and Sixth Amendment arguments. *Id*. at 6–10. Finally, the Government argues that Mr. Alvin's request for bifurcation lacks merit because the court should treat evidence of his prior convictions for ACCA purposes in the same manner as it treats evidence of a prior felony under 18 U.S.C. § 922(g)(1): namely, either allow Defendant to stipulate to the facts, or permit presentation of such evidence to the jury. *Id*. at 10–11. For the reasons that follow, we agree with the Government for the most part.[4]

### A. *Alvin's State Convictions Qualify as ACCA Offences*

We agree that Defendant's mismatch theory (*i.e.*, that his convictions for cocaine-related offences under Fla. Stat. § 893.13(1) do not meet the ACCA' definition of "serious drug offense") is directly foreclosed by binding Eleventh Circuit precedent that we are bound to follow. Thus, the arguments for striking the ACCA allegations from the indictment are currently untenable and must be rejected.

In relevant part, 18 U.S.C. § 924(e)(1) (the "ACCA") prescribes a 15–year mandatory minimum sentence if a defendant is convicted of being a felon in possession of a firearm following three prior convictions for a "serious drug offence, . . . committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The ACCA defines the term "serious drug offence" to include an offence under state law

---

[4] We do not share the Parties' agreed-upon position that the ACCA allegations in this case should be presented to the jury. As we explain further below, we find no legal or factual in this case for that procedure.

for conduct (manufacturing, distributing, or possessing) involving a "controlled substance;" and the meaning of the ACCA's "controlled substance," in turn, is defined by "section 102 of the Controlled Substances Act [the "CSA"] (21 U.S.C. 802)" (the "federal drug schedules"). § 924(e)(1)(ii). The federal drug schedules consist of five different schedules that list the several substances that are proscribed by the CSA. These schedules are revised and updated from time to time. *See* 21 U.S.C. § 812(a).

The gravamen of Defendant's mismatch theory is that one of the essential elements of Fla. Stat. § 893.13(1) goes beyond the ACCA because Florida's definition of cocaine is broader than the definition of "control substances" adopted by the ACCA. *See Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016) ("a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense."). This is so, Defendant posits, because on the day that he is alleged to have possessed a firearm in this case (*i.e.*, from April 3 to May 8, 2022), Fla. Stat. § 893.13's definition of cocaine included chemical compounds that were not among the ones listed in schedule II of the CSA (*i.e.*, ioflupane and all stereoisomers of cocaine).[5] Defendant's mismatch theory thus relies on the assumption that the ACCA's definition of "control substance" is governed by the federal schedules in effect on the date he engaged in the federal firearm base offence, rather than the schedules in effect on the date of his prior state convictions.

---

[5] However, Defendant's challenge on this score is purely a facial one. In other words, he does not assert that his three previous convictions under the Florida statute were triggered by conduct in relation to these "mismatched" chemical compounds.

Yet, because this assumption is contrary to the Eleventh Circuit's holding in *United States v. Jackson*, 55 F.4th 846, 850 (11th Cir. 2022), Defendant's argument must fail. As Defendant himself admits, "*Jackson* II currently forecloses this argument." [D.E. 110 at 6]. Stated another way, Defendant's argument boils down to a disagreement with the Eleventh Circuit's reasoning in what is otherwise binding, on point, authority.

Indeed, in *Jackson* the Eleventh Circuit expressly rejected the same mismatch argument that Defendant advances here. Like Mr. Alvin, Jackson contended that his 1998 and 2004 convictions under Fla. Stat. § 893.13(1) did not meet the ACCA's definition of "serious drug offense" because at the time of his firearm conviction, the federal schedules did not enumerate ioflupane as a controlled substance. *Jackson*, 55 F.4th at 850–51. Noting that this argument would only work "if ACCA's definition incorporates the version of the controlled-substances schedules in effect when a defendant commits the firearm offense rather than the version in effect when he was convicted of his prior state drug offense[,]" the Court categorically rejected Jackson's theory. *Id.* at 851, 856. Instead, and guided in part by Supreme Court precedent suggesting that construction of the ACCA calls for a backward-looking approach, the panel's opinion unequivocally concluded "that [the] ACCA's definition of a 'serious drug offense' under state law incorporates the federal drug schedules in effect at the time of the prior state conviction." *Id.* at 858. Thus, because Jackson's convictions under Fla. Stat. § 893.13(1) had occurred prior to 2015, the year in which ioflupane

8

was removed from the federal drug schedules, his state convictions could effectively constitute ACCA offenses. *Id.* at 861.

Leaving aside the fact that Defendant has not alleged an as-applied challenge, here, too, the Government indicates that Mr. Alvin's state conviction under § 893.13(1) for cocaine-related conduct took place in 2003, 2006, and 2013—periods of time during which both the Florida statute and the federal drug schedules included ioflupane in their respective definitions of cocaine. Accordingly, there is no mismatch between his convictions under Florida law and the ACCA's definition of "serious drug offense" that could justify staking these allegations from the indictment. To hold otherwise would be at odds with the Eleventh Circuit's unequivocal holing in *Jackson*, which is binding on this Court "unless and until [it] is overruled or undermined to the point of abrogation by the Supreme Court." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)). This is so even though the Supreme Court granted certiorari to review the *Jackson* opinion on May 15, 2023. *See Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1283–84 (11th Cir. 2015) ("grants of certiorari do not themselves change the law," and "[u]ntil the Supreme Court issues a decision that actually changes the law, we are duty-bound to apply [Eleventh Circuit] precedent").

We also find Defendant's second mismatch argument unpersuasive. According to him, Fla. Stat. § 893.13(1)'s definition of cocaine remains broader than that of the ACCA because Florida includes within its defection "any . . . stereoisomers" of cocaine whereas the CSA regulates only "optical and geometric" isomers of cocaine. [D.E. 110

at 10–12]. Plaintiff explains that optical and geometric isomers are two subsets of stereoisomers, whose molecular formulas and atomic connectivity vary based on the type of atomic bonding and molecular spacing within them. *Id.* Further, Defendant asserts that while optical and geometric isomers are types of stereoisomers, not all cocaine stereoisomers are optical and geometric. Thus, by including all stereoisomers, Fla. Stat. 893.13(1)'s definition of cocaine is broader than the ACCA's which penalizes only optical and geometric isomers. Not so.

Although the Supreme Court has held "that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense," *Mathis*, 136 S. Ct. at 2255, it is also the case that pointing out theoretical differences between the elements of a state offense and the federal one does not suffice to create a mismatch. Indeed, both the Supreme Court and the Eleventh Circuit have reputedly cautioned "that our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013) (quoting *Duenas–Alvarez*, 549 U.S., at 193, 127 S.Ct. 815); *see also United States v. Dixon*, 874 F.3d 678, 681 (11th Cir. 2017) ("The inquiry into the minimum conduct criminalized by the state statute must remain within the bounds of plausibility.") (citation omitted).

Nothing in this record supports the conclusion that the molecular differences between optical, geometric, and all other stereoisomers noted by Defendant have any

10

relevance beyond the realm of chemical theory.  Indeed, Defendant does not cite to a single authority showing that Florida prosecutes cocaine-related conduct involving stereoisomers other than optical or geometric, that any of his convictions were for possession of a substance made up of stereoisomers other than optical or geometric, nor does he proffer any evidence indicating that these molecular differences make Fla. Stat. § 893.13 applicable to a broader range of conduct.  In other words, Defendant has not shown any probability that Florida would penalize an offense involving a form of cocaine that would not otherwise be considered a controlled substance under the CSA.  Thus, because Mr. Alvin's mismatch theory does not have a place "within the bounds of plausibility," this claim must be rejected.

In sum, Mr. Alvin's convictions under Fla. Stat. § 893.13(1) for cocaine-related conduct satisfy the ACCA's definition of "serious drug offences" and thus they can serve as predicates of an ACCA enhancement.

### B. *The Occasions Clause is Constitutionally Sound*

Next, we turn to Defendant's constitutional challenges to the ACCA.  As noted earlier, the ACCA imposes a 15–year mandatory minimum sentence on a defendant who is convicted of being a felon in possession of a firearm following three prior convictions for a "serious drug offence, . . . *committed on occasions different from one another*" (the "Occasions Clause").  18 U.S.C § 924(e) (emphasis added).  Defendant submits that the Occasions Clause renders the whole statute invalid because the Supreme Court's holding in *Wooden v. United Sates*, 142 S.Ct. 1063 (2022), coupled

11

with the *Apprendi* rule[6] and pre-*Wooden* Eleventh Circuit case law referring to the ACCA as an enhancement statute to be applied by the judge (not the jury), must lead to the inevitable conclusion that the ACCA impermissibly invades the fact-finding domain of the jury. [D.E. 110 at 2–4, 13–16].

Despite the Defendant's fervent claims of irreparable unconstitutionality, he has failed to cite any legal authority supporting his position, and our own research has yielded no such support. Nor do we find that the holding in *Wooden* dictates the unprecedented step of declaring the ACCA facially unconstitutional. To the contrary, the underlying logic of *Wooded*—a case stemming from an *as-applied challenge* to the Occasions Clause, which articulated a framework for its proper application *by judges*—suggests that the Court presumed the clause's constitutional soundness.

*Wooden* involved the application of the Occasions Clause to a defendant who burglarized ten storage units on a single night, which led to his guilty plea to ten different counts of burglary. *Wooden*, 142 S.Ct. at 1067. Decades later, a federal judge found that those convictions qualified as offenses "committed on occasions different from one another," sufficient to subject Mr. Wooden to an ACCA enhancement. This was so, even though Mr. Wooden raised factual objections to this determination on the basis that the burglaries "happened 'during the same criminal episode,' 'at the same business location, under the same roof.'" *Id*. at 1068. After the

---

[6] In *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000) the Supreme Court held that both the Fifth and Sixth Amendments require that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 2355.

Sixth Circuit upheld his sentence enhancement, the Supreme Court granted certiorari and reversed.

Rejecting what it called the prosecution's "focus on the precise timing of elements—which can make someone a career criminal in the space of a minute," the Supreme Court held that Mr. Wooden's "one-after-another-after-another burglary of ten units in a single storage facility occurred on one 'occasion,' under a natural construction of that term[.]" *Id*. at 1069–70. In so holding, the Court instructed that determining an occurrence can be divined using a "multi-factored test" which considers "a range of circumstances" such as whether the offenses are "separated by substantial gaps in time," the "[p]roximity of location" where the offenses occurred, and "the character and relationship of the offenses." *Id*. at 1070–71. This test, the Court noted, "will be straightforward and intuitive" because, unlike "offenses separated by substantial gaps in time or significant intervening events," "[o]ffenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion." *Id*. at 1071. Accordingly, the Court held that Mr. Wooden's convictions for burglaries committed on a single night, in an uninterrupted course of conduct, and at one location, "were for offenses committed on a single occasion." *Id*.

We cannot infer from this straightforward, narrow ruling any suggestion that the Supreme Court now considers the ACCA facially unconstitutional under the Fifth, Sixth, or any other amendment.[7] Indeed, *Wooden* explicitly did not address

---

[7] One could perhaps make a colorable argument that the *Apprendi* and *Wooden* rulings combined open the door to as-applied challenges to the Occasions Clause in cases where a defendant proffers legitimate factual disputes in connection with the

whether the separate occasions determination must be made by a jury rather than a judge. *See id*. at 1068 n.3. Thus, in the absence of clear guidance from the Supreme Court indicating otherwise, we are bound by the law of our circuit that holds that the Occasions Clause, as applied by sentencing judges, is constitutionally sound. *See United States v. Dudley*, 5 F.4th 1249, 1265 (11th Cir. 2021) ("we have reaffirmed our holding that district courts may rely on non-elemental facts contained in *Shepard*-approved documents when deciding whether a defendant's predicate offenses were committed on occasions different from one another."); *United States v. Turner*, No. 22-10454, 2023 WL 4199180, at *3 (11th Cir. June 26, 2023) ("The district court committed no error in determining that the offenses underlying Turner's three drug convictions occurred on different occasions within the meaning of the ACCA"); *United States v. McRae*, No. 21-13905, 2023 WL 5091799, at *6 (11th Cir. Aug. 8, 2023) ("The record convinces us that the district court did not err, let alone plainly err, in determining that McRae had committed his cocaine offenses on different occasions."); *United States v. Penn*, 63 F.4th 1305, 1318 (11th Cir. 2023) (there was no plain error in district court's determination of the occasions inquiry where defendant raised the issue for the first time on appeal); *see also United States v. Erlinger*, 77 F.4th 617, 622 (7th Cir. 2023) (holding the *Wooden* did not address the Sixth Amendment

---

separate occasion inquiry or any other elemental fact of his state conviction. That is obviously not the case here, where even under Justice Gorsuch's concurring opinion, which Defendant purports to cite in his favor, Mr. Alvin's 2003, 2006, and 2013 state convictions clearly constitute separate occasions. *See Wooden*, 142 S. Ct. at 1080 (Gorsuch, J., concurring) ("Who doubts that . . . two murders separated by years and miles take place on separate occasions?").

questions and, as such, the court remains bound to its prior precedent empowering the sentencing judge to make the ACCA's different-occasions determination).

Defendant's vagueness theory also misses the mark and we can quicky dispense with it because the Eleventh Circuit has also expressly rejected this argument. *See United States v. Jones*, No. 20-11841, 2022 WL 1763403, at *3 (11th Cir. June 1, 2022) (rejecting identical argument and noting that "the different-occasion provision is not unconstitutionally vague[,] [because its] language gives persons of ordinary intelligence fair notice that committing qualifying offenses on different occasions will result in the sentencing enhancement, and it permits non-arbitrary enforcement, *see Johnson*, 576 U.S. at 595, through *Wooden*'s multifactor test, *see* 142 S. Ct. at 1071."); *United States v. McCall*, No. 18-15229, 2023 WL 2128304, at *7 (11th Cir. Feb. 21, 2023) (same).

In sum, Defendant's facial constitutional challenge on the ACCA lacks merit. Defendant's Fifth and Sixth Amendment claims are premised on a contorted reading of *Wooden* that is not supported by the holding of the opinion and is at odds with this Circuit's longlasting precedent upholding the legal soundness of the ACCA as applied by district judges at sentencing. Accordingly, Defendant's motion to strike the ACCA allegations from the indictment should be DENIED.

### C. *The Motion to Bifurcate is Moot*

Having determined that Defendant's facial constitutional challenge to the ACCA has no merit, his alternative motion to bifurcate the trial should be DENIED as moot. The law in this Circuit is that the judge, at sentencing, conducts the occasion-different analysis by reference to a limited set of documents: "we have

reaffirmed our holding that district courts may rely on non-elemental facts contained in *Shepard*-approved documents when deciding whether a defendant's predicate offenses were committed on occasions different from one another." *Dudley*, 5 F.4th at 1265. As noted above, nothing in *Wooden* changes this settled rule, and certainly nothing in this record suggests that we ought to depart from this longlasting sentencing practice. Defendant's challenges to the ACCA are all premised on allegations of facial unconstitutionality, not on any legitimate factual disputes that go to the essential elements of the charged offenses. Defendant does not dispute that his 2003, 2006, and 2013 state convictions occurred on occasions separate from one another. Nor does he allege that his prior convictions lacked the required mens rea, actus rea, or any other of the essential elements of the relevant state crimes. In other words, nothing about the ACCA allegations made against Mr. Alvin in this case could possibly require the involvement of a jury.

Of course, we are not saying that the trial judge does not have license to delegate the occasion-different inquiry to the jury and bifurcate the proceedings at trial if she so wishes—particularly in light of the fact that the parties agree on this point. However, at this juncture, we do not find a legal or factual basis compelling this result. *See United States v. Parr*, No. 2:21-CR-280-AMM-GMB, 2023 WL 3458096, at *2 (N.D. Ala. Feb. 27, 2023), *report and recommendation adopted*, 2023 WL 2947620 (N.D. Ala. Apr. 14, 2023) (denying motion to bifurcate because defendant has "not shown that the court should submit the question of his ACCA eligibility to a

jury—during a bifurcated trial or otherwise."). Accordingly, the request to submit the ACCA allegation to the jury and bifurcate the trial should be DENIED as moot.

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to strike the ACCA allegations from the indictment, or bifurcate trial, [D.E. 110] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), good cause exists to expedite a response. The parties have until **January 8, 2023,** to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.*, *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 28th day of December, 2023.

>  /s/ *Edwin G. Torres*
>  EDWIN G. TORRES
>  Chief United States Magistrate Judge