UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20244-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

FREDERICK LEE ALVIN,

    *Defendant*.

_____/

## REPORT AND RECOMMENDATION ON MOTIONS IN LIMINE

This matter is before the Court on two related motions pending in the action. Defendant Frederick Lee Alvin ("Defendant" or "Alvin"), stands accused of robbing a convenience store at gun point on April 3, 2022. Through his motion in limine he seeks to preclude the United States of America (the "Government") from presenting evidence relating to his involvement in a subsequent hotel robbery on May 8, 2022—which resulted in his arrest—pursuant to Fed. R. Evid. 404(b). [D.E. 51]. The Government has cross-moved to affirmatively admit this evidence into trial under Rule 404 as inextricably intertwined evidence. [D.E. 52]. The motions are ripe for disposition.[1]  After careful consideration of the motions, the record, the relevant authorities, and for the reasons discussed below, Defendant's motion in limine should

---

[1] On October 10, 2023, the Honorable Darrin P. Gayles referred these and other motions to the undersigned Magistrate Judge. [D.E. 43].

be **DENIED** and the Government's cross-motion to admit should be **GRANTED**. Any alternative relief in the form of limiting instructions at trial are reserved for the trial Judge's consideration at the appropriate time.

### I. BACKGROUND

The Second Superseding Indictment charges Mr. Alvin with four criminal counts stemming from his alleged involvement in the armed robbery of a convenience store on April 3, 2022. [D.E. 43]. According to the Government, on that date, Mr. Alvin entered the B & J Market in the Little Havana neighborhood of Miami wearing a black mask. Once in the store, he proceeded to pull out a handgun and threaten to shoot the cashier if he did not to give him the money in the register. [D.E. 52 at 3]. Mr. Alvin fired a single shot into the floor and took approximately $3,000 from the store register in cash before fleeing the store on foot. *Id*. Security footage from inside the market depicts the masked robber wearing a distinct black and gold "G-shock" watch, as well as a distinct pair of Nike sneaker shoes. *Id*. at 4.

Investigative efforts by law enforcement led to the identification of Luther Henry, Mr. Alvin's co-defendant and alleged accomplice in the market robbery.[2] Analysis of Mr. Henry's phone data revealed that the two of them spoke to each other immediately before and after the robbery, and pinpointed their location near the closest cell tower to the market during the robbery. *Id*. A subsequent search warrant for Mr. Alvin's residence uncovered a loaded magazine containing the same type of

---

[2] Mr. Henry has pled guilty to one count of conspiracy to commit Hobbs Act robbery and has agreed to cooperate with the Government. [D.E. 64 ¶¶ 1, 8].

bullets as the one fired at the market, as well as the same green Nike Ken Griffey Jr. Air Max 1 athletic shoes worn by the suspect during the robbery. *Id.*

Mr. Alvin, however, was arrested during a different incident. On May 8, 2022, police officers responded to reports of an armed assault and robbery at a hotel in the Little River neighborhood of Miami. According to the owner of the hotel, Mr. Alvin entered the hotel with a gun and began knocking on various rooms. When the owner called the police, Mr. Alvin walked over to him in the lobby and fired the gun at his midsection. As the owner fled from the hotel, he heard additional gunshots. *Id.* 4–5.

By the time law enforcement arrived at the scene, Mr. Alvin had locked himself in one the hotel's unoccupied rooms. Law enforcement negotiators and S.W.A.T. officers attempted to convince Mr. Alvin to exit the room peacefully. During these talks, officers saw a gun lying on the floor of the room through a large window facing the front of the hotel. After several hours of negotiations, Mr. Alvin exited the hotel room without the gun and was arrested. Mr. Alvin was wearing a black and gold "G-shock" watch at the time his arrest. *Id.* at 5.

A crime scene investigator collected the gun from the room—a Taurus, Model PT111 G2, 9mm caliber pistol—and one fired casing from the hotel lobby floor. Inside the firearm was an additional fired casing, as well as one live round of ammunition. The live ammunition and casings found at the hotel were of the same type as the fired casing recovered at the B & J Market and the ammunition found during the search of Mr. Alvin's residence. A ballistics examiner later determined that the Taurus

firearm possessed by Mr. Alvin at the hotel was the same gun used in the market robbery on April 3. *Id.*

The Second Superseding Indictment charges Mr. Alvin with conspiracy to commit Hobbs Act robbery (Count 1), substantive Hobbs Act robbery (Count 2), possession and discharge of a firearm during the commission of a crime of violence (Count 3), and possession of a firearm and ammunition by a convicted felon (Count 4), in violation of 18 U.S.C. §§ 1951(a), 924(c)(1)(A)(iii) and 922(g)(1) and 924(e) respectfully.[3]

## II.   ANALYSIS

Defendant moves for an order from this Court precluding the Government from introducing evidence of the circumstances of the May 8, 2022, hotel robbery—a crime that is not alleged in the underlying federal indictment. [D.E. 51]. Specifically, Defendant submits that testimony of the hotel robbery would be inflammatory and unduly prejudicial, as well as irrelevant, because Mr. Alvin's acts on May 8th "have no bearing on whether Defendant did, or did not, commit" any of the charged crimes. *Id.* at 3, 5. Accordingly, Defendant asserts that the Government's presentation should be strictly limited to the fact that he was arrested and that a gun was recovered from him during the arrest on May 8; nothing more. *Id.* at 6–7.

---

[3] Similarly, the State of Florida has brought five charges against Mr. Alvin arising out of the hotel robbery: (1) attempted felony murder with a firearm, (2) robbery by sudden snatching, (3) armed robbery with a firearm, (4) possession of a firearm by a convicted felon, and (5) burglary of an unoccupied structure.

As a threshold matter, we note that the Government's cross-motion/response—to which Defendant did not reply—appears to moot most of Defendant's claims regarding the potential for introduction of violent, inflammatory, and unduly prejudicial testimony in connection with the hotel robbery. Specifically, the Government represents that it will not present evidence of Mr. Alvin's possession of a second firearm on May 8, the specific facts underlying his robbery and assault of several victims, nor any of the video from law enforcement body cameras depicting Mr. Alvin's forceful arrest. [D.E. 52 at 3]. Indeed, the Government insists that it will limit its presentation of the hotel robbery to only facts intrinsic to the charged crimes:

> (1) testimony from the hotel owner that the Defendant entered the hotel with a firearm, attempted to enter multiple rooms of the hotel, and then shot at him, as well as testimony that the room where the Defendant emerged from and officers found the gun was unoccupied; (2) testimony from law enforcement officers positively identifying Alvin as the man inside the hotel room; (3) testimony from a law enforcement officer and crime scene investigator about their recovery of a firearm from inside the hotel room, the Defendant's possession of the distinctive watch, and the ammunition and casings they recovered from the hotel lobby floor and from inside the gun; (4) testimony from the crime scene investigator about processing the gun for fingerprints and DNA; (5) the physical evidence of the firearm, ammunition, casings, and watch; and (6) expert testimony from a firearm expert that the gun possessed by Alvin at the hotel was the same one used in the convenience store robbery.

*Id.* at 2.

Considering and relying upon the Government's representation that its discussion of the May 8 events will be limited to the basic facts enumerated above, we are unpersuaded by Defendant's argument that the remaining testimony at issue in the motion is barred by Rule 404(b) or Rule 403. This is so because these facts will be introduced, not to suggest that Mr. Alvin has a propensity to commit robberies,

but to help establish that Mr. Alvin was the assailant behind the mask during the April 3 market assault. In other words, these facts will be introduced for the specific purpose of evidencing identity—one of the expressly permitted uses enumerated by Rule 404(b).

To be admissible, "Rule 404(b) evidence must (1) be relevant to an issue other than the defendant's character; (2) sufficiently prove that the defendant committed the extrinsic act; and (3) not create undue prejudice that substantially outweighs its probative value, and or violate the other requirements of Rule 403." *United States v. Perry*, 352 F. App'x 351, 353 (11th Cir. 2009) (citation omitted). Moreover, Rule 404(b) explicitly permits the admission of evidence related to uncharged acts if the evidence is aimed at establishing the defendant's identity.[4] "When evidence is introduced to prove identity, its probity 'depends upon both the uniqueness of the modus operandi and the degree of similarity between the charged crime and the uncharged crime.'" *United States v. Pearson*, 308 F. App'x 375, 377 (11th Cir. 2009) (citation omitted). However, "it is not necessary that the charged crime and the other

---

[4] Federal Rule of Evidence 404(b) provides in relevant part:

**(b) Other Crimes, Wrongs, or Acts**.

**(1) *Prohibited Uses***. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) *Permitted Uses.*** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

6

crimes be identical in every detail[;] they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the uncharged crime are the same person." *Id.* (citation and quotation marks omitted).

Considering the totality of the circumstances in this case, we agree that evidence of the hotel robbery—if limited to the basic facts outlined earlier—is admissible to support the factfinder's determination of identity.[5] As the Government points out, there is more than enough indicia of commonality in the essential physical features of the two robberies, as well as circumstantial evidence tying Mr. Alvin to both crimes, to allow the jury to make a sound and valid inference that Mr. Alvin was the masked person who carried out the April 3 robbery. The reality that Defendant was arrested on May 8 during a second robbery in Miami where he wore the same distinct watch, used the same handgun, and fired the same type of ammunition as the one used during the April 3 market robbery is hard to overlook.[6]

Further, when coupled with the fact that the same distinct sneakers and ammunition used by the market robber were later found in Mr. Alvin's residence, the link between all these common denominators becomes sufficiently sound to allow the finder of fact to make a reasonable inference that Mr. Alvin was indeed the

---

[5] That the "other crimes" relevant here took place after the charged conduct is of no moment. *See United States v. Pollard*, 509 F.2d 601, 604 (5th Cir. 1975) ("That the acts in question occurred subsequent to the offense charged does not affect admissibility.")

[6] In support of the two last points, the Government will proffer the testimony of a ballistics expert who has concluded that the casings from both robberies were fired from the same gun that was in Mr. Alvin's possession the day of his arrest.

perpetrator of the market robbery. Thus, we find no basis to exclude this testimony under the mandate of Rule 404(b). *See United States v. Walters*, 244 F. App'x 623, 628 (6th Cir. 2007) (photo of different robbery portraying suspect wearing dreadlocks and a baseball cap admissible to show identity in the charged robbery); *United States v. Pineda Castro*, 795 F. App'x 635, 652 (11th Cir. 2019) (evidence of prior statements and acts linking robber to a pistol admissible to establish his identity in the charged robbery).

We also disagree with Defendant's suggestion that the probative value of the evidence of the hotel robbery is substantially outweighed by the undue prejudice it might generate. To begin with, it is now clear that the Government will *not* introduce any testimony regarding the underlying facts of the hotel robbery, including Defendant's assault on several hotel residents or video depicting his forceful arrest. The potential for prejudice that could emerge from this type of inflammatory evidence is thus not a countervailing factor of relevance in this dispute. And to the extent that one can make a colorable argument that even the basic facts proposed by the Government will generate some unfair prejudice, this prejudice can be "mitigated by the trial judge's limiting instructions." *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993); *see also United States v. Elysee*, 993 F.3d 1309, 1348 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2782, 213 L. Ed. 2d 1018 (2022) (defendant unable to make showing of unfair prejudice where trial judge issued a limiting instruction to help alleviate potential prejudice from Rule 404(b) evidence).

Conversely, the probative value of this evidence in establishing identity—which is likely to be one of Mr. Alvin's defenses at trial and a disputed fact given his not guilty plea—is substantial. As noted earlier, evidence that Mr. Alvin was involved in a second robbery where he wore the same exact gold and black watch, used the same gun, and fired the same ammunition employed during the preceding market robbery, in addition the fact that the same sneakers and ammunition used by the market assailant were found in Mr. Alvin's residence, constitutes very strong evidence that, if believed, will solidify the identity link between the two crimes.

Additionally, aside from strongly supporting a showing of identity, evidence related to the hotel robbery, which encompasses Mr. Alvin's possession of the handgun during that specific period, has a direct bearing on the Government's obligation to substantiate at least one of the counts. Count IV of the indictment alleges that Mr. Alvin unlawfully possessed a firearm on a continuous basis from April 3 to May 8, 2022. Thus, evidence that Defendant used the same gun in furtherance of the hotel robbery almost one month after the market assault, could serve as direct evidence that Mr. Alvin was in continuous possession of the handgun. *See United States v. Dixon*, 901 F.3d 1322, 1344–45 (11th Cir. 2018) (noting that evidence is admissible if it "arose out of the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense.") (citation and quotation marks omitted); *see also United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only Unfair

9

prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing").

In sum, because the Government has narrowed its presentation of the relevant circumstances surrounding the hotel robbery to what are basic facts tailored to establishing Defendant's identity in the market robbery, and because the probative value of this evidence is not substantially outweighed by its unfair prejudice, Defendant's motion in limine pursuant to Rules 404(b) and 403 [D.E. 51] should be **DENIED** and the Government's cross-motion [D.E. 52] should be **GRANTED** but limited to the narrow set of facts detailed in the cross-motion.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion in limine [D.E. 51] be **DENIED** and the Government's motion to admit [D.E. 52] be **GRANTED** in limited part as set forth above.

Pursuant to Local Magistrate Rule 4(b), good cause exists to expedite a response. The parties have until **January 8, 2023,** to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell*, 2017 WL 443634

(11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 28th day of December, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge